**In re Chris K. PARSONS, Rebecca M. Parsons, Debtors.**

**Bankruptcy No. 2–90–06786.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Dec. 17, 1991.

Joseph F. Castner, Newark, Ohio, for debtors.

Stephen D. Miles, Dayton, Ohio, for Kemba Credit Union.

Frank M. Pees, Worthington, Ohio, Chapter 13 Trustee.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio, Asst. U.S. Trustee.

## OPINION AND ORDER

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Preliminary Matters*

This matter is before the Court upon the objection of the Chapter 13 trustee ("Trustee") to the amended claims of Kemba Credit Union ("Kemba"). Kemba has opposed

the Trustee's objection. Following a non-evidentiary hearing on November 12, 1991, the matter was taken under advisement.

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this judicial district. This is a core proceeding which the Court may hear and determine under the authority of 28 U.S.C. § 157(b)(1) and (b)(2)(B). The following opinion and order shall constitute the Court's findings of fact and conclusions of law pursuant to Federal Bankruptcy Rule of Procedure 7052.

## II. *Findings of Fact*

Chris and Rebecca Parsons ("Debtors") filed a petition under Chapter 13 of the Bankruptcy Code on October 11, 1990. According to their bankruptcy schedules, Kemba holds a claim in the amount of $6,700, secured by a 1986 Pontiac Bonneville valued at $5,750. The schedules indicate further that Kemba holds a claim in the amount of $6,500, secured by a 1985 Ford Explorer valued at $3,450. An Agreed Order between the Debtors and Kemba, entered March 26, 1991, set the value of a 1985 Ford Ranger at $5,325. Presumably, the Ford Ranger is the same vehicle as the Ford Explorer.

An Order Confirming Chapter 13 Plan was entered by the Court on January 16, 1991. The plan provides full payment on secured claims and a fifty percent (50%) dividend on unsecured claims. The Trustee has been making distributions to holders of claims since confirmation of the plan.

February 5, 1991 was the last date on which a creditor could file a timely proof of claim. Kemba filed two proofs of claim on that date. The first claim, assigned Claim No. 16, concerning the Debtors' obligation on the Ford, was filed as a secured claim in the amount of $5,881.45; the second claim, Claim No. 17, representing the Debtors' obligation on the Bonneville, was filed as a secured claim in the amount of $6,376.29. The box permitting Kemba to accept or reject the Debtors' plan ("Plan") was left blank on both claims (the "Original Claims"). On September 9, 1991, Kemba filed amended proofs of claim ("Amended Claims"), noting that "[c]reditor did not accept claim when filed" and purporting to reject the plan.

## III. *Conclusions of Law*

A determination as to whether to permit an amendment to a timely filed proof of claim rests within the sound discretion of the bankruptcy judge. *Associated Container Transportation (Australia) Ltd. v. Black & Geddes, Inc. (In re Black & Geddes, Inc.)*, 58 B.R. 547, 553 (S.D.N.Y. 1983); *In re Wilson*, 136 B.R. 719, 721 (Bankr.S.D. Ohio 1991); *In re McLean Industries, Inc.*, 121 B.R. 704, 708 (Bankr. S.D.N.Y.1990). An amendment to a claim is not permitted without leave of court. *McLean Indus.*, 121 B.R. at 706; *Bishop v. United States (In re Leonard)*, 112 B.R. 67, 71 (Bankr.D.Conn.1990) (citations omitted). Courts are guided in making this determination by a two-part test. *In re C.P.M. Construction*, 124 B.R. 335, 338 (Bankr.D.N.M.1991); *McLean Industries*, 121 B.R. at 708; *Leonard*, 112 B.R. at 71.

The first prong of the test is drawn from *In re G.L. Miller & Co.*, 45 F.2d 115 (2d Cir.1930). The court in *Miller* held that allowance of an amended claim turns on whether "the subsequent claim may be fairly characterized as an amendment of a timely filed claim or in substance a new claim." *McLean Industries*, 121 B.R. at 708 (citing *Miller*, 45 F.2d at 117). Hence, it must be determined whether the amended claim bears a "reasonable relationship" to the original claim and is not a "veiled attempt to file a new claim." *United States v. Internat'l Horizons*, 751 F.2d 1213, 1216 (11th Cir.1985); *United States v. Simon (In re Bondi's Valu–King, Inc.)*, 126 B.R. 47, 49 (N.D. Ohio 1991); *C.P.M. Construction*, 124 B.R. at 338; *McLean Industries*, 121 B.R. at 708; *Leonard*, 112 B.R. at 71. An amendment should be allowed where it corrects a defect in the claim as originally filed, describes the claim with greater particularity, or pleads a new theory of recovery. *Internat'l Horizons*, 751 F.2d at 1216 (citing *Szatkowski v. Meade Tool & Die Co. (In re Meade Tool & Die Co.)*, 164 F.2d 228, 230 (6th Cir.1947);

*Miller,* 45 F.2d 115); *First Nat'l Bank of Mobile v. Everhart,* 617 F.2d 415, 420 (5th Cir.1980); *McLean Industries,* 121 B.R. at 708.

The second prong of the test requires the Court to determine whether it would be equitable to permit an amendment. Specifically, permitting a creditor to amend its claim must be fair and impose no undue hardship on a party. *Black & Geddes,* 58 B.R. at 553; *C.P.M. Construction,* 124 B.R. at 338; *McLean Industries,* 121 B.R. at 708. In making this determination, the following factors should be considered by the Court:

1. whether there will be undue prejudice to the opposing party, *McLean,* 121 B.R. at 708 (citing *Futuronics Corp. v. Sycamore Indus., Inc. (In re Futuronics Corp.),* 23 B.R. 281, 283 (S.D.N.Y.1982));

2. whether there is bad faith or dilatory behavior on the claimant's part, *McLean,* 121 B.R. at 708 (citing *In re Hertz,* 38 B.R. 215, 218 (Bankr. S.D.N.Y.1984)). *See also In re Butcher,* 74 B.R. 211, 216 (Bankr. E.D.Tenn.1987);

3. whether other creditors would receive a windfall were the amendment not allowed, *McLean,* 121 B.R. at 708 (citing *In re Saxe,* 14 B.R. 161, 165 (Bankr.S.D.N.Y.1981)). *See also Butcher,* 74 B.R. at 216;

4. whether other claimants might be harmed or prejudiced, *McLean,* 121 B.R. at 708 (citing *Black & Geddes,* 58 B.R. at 553);

5. whether there is a justification for not filing the amended claim at the time the original claim was filed, *McLean,* 121 B.R. at 708 (citing *Black & Geddes,* 58 B.R. at 553). *See also Butcher,* 74 B.R. at 216.

**A. Reasonable Relationship of Original and Amended Claims**

The only difference between the Original Claims and Amended Claims is that the latter seek to reject the Plan. This seemingly minor difference is not without significance: a secured claimholder must reject a Chapter 13 plan in order to be paid postpetition interest on the secured portion of the claim. *Memphis Bank & Trust Co. v. Whitman,* 692 F.2d 427, 429 (6th Cir. 1982); *In re Fitak,* 92 B.R. 243, 252 (Bankr.S.D. Ohio 1988), *sustained by,* 121 B.R. 224 (S.D. Ohio 1990).[1] Kemba, having failed to specifically reject the Plan in its Original Claims, is therefore not entitled to receive postpetition interest on such claims because it is deemed to have accepted the Plan.

The Amended Claims are reasonably related to the Original Claims if the amendments correct a defect in the claims as originally filed, describe the claims with greater particularity, or plead a new theory of recovery. Here, the Amended Claims do not describe the Original Claims with greater particularity, nor do they plead a new theory of recovery. The Amended Claims simply attempt belatedly to reject the Plan so that Kemba may receive postpetition interest on the secured portion of its claim. Nonetheless, the Court concludes that this attempted amendment bears a reasonable relationship to the Original Claims.

**B. Equitable Considerations**

The Court next must determine whether equitable considerations mitigate against permitting Kemba to file the Amended Claims or have them allowed. The Trustee opposes allowance of the Amended Claims on grounds that the amendments adversely affect the estate. Kemba, on the other hand, asserts that the underlying claims were timely filed and that a clerical error accounted for the failure to reject the Plan in the Original Claims.

The Court concludes that allowance of the Amended Claims would be inequitable. The Plan provides for payment of a 50% dividend to holders of unsecured claims.

---

1. Local Bankruptcy Rule C–3.18.12(e) states in pertinent part: "Claimants which do not specifically reject the treatment proposed in the plan for their claim shall be deemed to have accepted the plan."

Allowing the amendments would either reduce the dividend or lengthen the Plan, thereby harming other creditors. Another factor in the Court's analysis is the lack of justification for not rejecting the Plan at the time the Original Claims were filed. The only reason asserted by Kemba for its failure to reject the Plan in the Original Claims was that "it was a clerical error." No evidence was put forth in support of this assertion. This is not an adequate justification for the untimely filing. A third factor is that no windfall to other creditors will occur if the Amended Claims are disallowed. The amount at issue is not large and unsecured creditors are receiving only a 50% payout on the Plan. The Court thus concludes that allowance of the Amended Claims would be inequitable.

Based upon the foregoing, Kemba's Amended Claim No. 16 and Amended Claim No. 17 hereby are disallowed in their entirety.

IT IS SO ORDERED.